## HALE *v.* AKERS.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 270. Submitted December 6, 1889. — Decided December 23, 1889.

Where the Supreme Court of a State decides a Federal question, in rendering a judgment, and also decides against the plaintiff in error on an independent ground not involving a Federal question, and broad enough to maintain the judgment, the writ of error will be dismissed, without considering the Federal question.

THE case is stated in the opinion.

*Mr. W. W. Cope*, for plaintiffs in error, submitted on his brief.

*Mr. Frank W. Hackett*, for defendants in error, submitted on his brief. *Mr. Barclay Henley* also filed a brief for same.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action brought August 22, 1879, in the Superior Court in and for the county of Sonoma, in the State of California, by Henry M. Hale and Georgiana L. Schell, executors of the will of Theodore L. Schell, deceased, against Stephen Akers and Montgomery Akers, to recover the possession of a piece of land in Sonoma County, being a portion of the Huichica rancho, and described as follows: "Beginning at a point on the northerly line of the lane which runs from the dwelling-house of said Schell, westerly to the road leading from the Sonoma Plaza to the Embarcadero called 'Montgomery Street,' or 'Broadway,' which place of beginning is distant 23.24 chains from the point of intersection of said lane and said road; thence north 50 deg. and 45 min. west along a fence 18.98 chains; thence south 37 deg. 15 min. west about 25 chains to a point on the northerly line of said lane, distant 3.63 chains easterly from the point of intersection aforesaid; thence north 78 deg. 30 min. east along said northerly line

19.61 chains to the place of beginning, containing eighteen and a half acres."

The answer of the defendants set up, among other defences, that Stephen Akers entered into possession of the premises more than twenty-five years before the suit was brought, under a claim of title by a written conveyance made in 1858 by the city of Sonoma, in Sonoma County, which city was then in the possession of, and claimed title to, the premises, under a decree of confirmation by the board of land commissioners, dated January 22, 1856, and by the judgment and decree of the Circuit Court of the United States for the Northern District of California, made November 16, 1864; that he was the owner in fee of the premises; that on the 11th of October, 1860, he entered into a written agreement with Schell, the testator of the plaintiffs, whereby he released to Schell one-half of a piece of land then in the possession of Akers, and containing 111 acres and 2 rods of land, and Schell agreed thereby that, in the event the city of Sonoma should establish its claim to any part of such released tract of land, he would deliver the possession of the same, or such portions thereof as might be so established, together with a yearly rent of $5 per acre for the land so to be delivered, and that Akers thereby agreed that, in the event of the city of Sonoma not being able to establish its claim beyond the present line of the Huichica patent, he would deliver possession to Schell of all or such portion of the remainder of such tract of land as might be within the line of the Huichica patent, and would pay a yearly rent for the same, at the rate of $5 per acre, to Schell; that by that agreement Schell relinquished all claim to the premises in question, and acquiesced in Akers's title and right of possession; that previous to October 11, 1860, and then and ever since, the city of Sonoma claimed the said lands as its pueblo lands, adversely to Schell, and was then, and ever since had been, prosecuting its claim before the land department of the government; that, before that time, the said city conveyed by deed to Akers the premises for which the suit was brought, and by virtue thereof he was, on the 11th of October, 1860, in possession of the premises and claiming the

same adversely to Schell; that at that time Akers claimed that the premises were within the pueblo lands of the city of Sonoma, and that that city would establish before the land department of the United States and the Commissioner of the General Land Office its claim thereto; that the defendants and the said city then and ever since claimed that the pueblo extended on the southeast to the Arroyo Seco, and that the Arroyo Seco formed the boundary line between the pueblo lands of the city and the lands of Schell, whilst Schell then claimed that the Arroyo Seco did not form such boundary line, but extended beyond it on the north and included the lands of Akers; that, to settle the difficulties and avoid litigation, Akers and Schell made said agreement to await and abide the decision of the land department of the United States on the application of the city to have its title to its lands confirmed; that Schell then agreed with Akers that Schell should never claim any title to the lands described in the complaint, until it was determined by a decree of the land department of the United States that the city could not establish its title thereto; that Akers, for the purpose of avoiding litigation and to await and abide the decision of said land department, delivered over to Schell other land within the pueblo, to await such decision, and Schell then agreed that, in the event the city established its claim to any of the land, he would forever release all claim of title or possession thereto, deliver up to Akers all the lands claimed by Akers within the pueblo, and pay to Akers $5 per acre per year for the use thereof; that Akers was to hold the land until the city should so fail to establish its title thereto; that the city had not failed to do so, but had established its claim; that on the 31st of March, 1880, and since the suit was commenced, the United States issued and delivered to the city and the trustees thereof a patent for the land described in the complaint; that the plaintiffs claimed the land by virtue of a patent issued by the United States to one Leese, and known as the Huichica patent; that said patent does not include the premises; that if it does, the same was made without authority of law; that the only authority on which the Huichica patent issued was a

decree of the said Circuit Court of the United States, made December 24, 1856; and that said decree did not authorize the issuing of a patent by the United States for the land described in the complaint, or for any land on the west side of the Arroyo Seco, but made the Arroyo Seco the boundary between the pueblo and the Huichica rancho.

The cause was tried by the court without a jury, and it made a finding of facts, comprising the facts set forth in the answer, with additional matters, the only material ones being as follows: A grant to one Leese of the place called Huichica was made by the Mexican governor of California, in 1841, and embraced all the land between the Arroyo Seco, the Arroyo de los Carneros, and the swamp land, containing two square leagues, the western boundary being the Arroyo Seco. Subsequently, the governor adjudged this grant to be void, because the land of which judicial possession was attempted to be given under it was much more than the quantity granted. Under a subsequent petition by Leese, and on July 6th, 1844, the then governor of California made to Leese a second grant of three and one-half leagues of the land called Huichica, bounded on the north by the crossing of the upper road to Napa, on the east by the Arroyo de los Carneros, on the south by the swampy lands on the bay, on the west by Estero de Sonoma as far as the Trancas, taking the direction of the Arroyo Seco as far as the Little Hills of Huichica. This grant was made subject to approval by the departmental assembly, but was never placed before it for approval, although the first grant was approved by it after the second grant had been made. A claim of Leese to the whole Huichica tract of five and one-half leagues was confirmed by the board of land commissioners April 18th, 1853, and by the District Court of the United States April 22d, 1856. An appeal to the Supreme Court of the United States was dismissed in December, 1856, no decree respecting the claim having ever been made by the Circuit Court of the United States. The decree of confirmation contained this clause: "The land of which confirmation is hereby made is known by the name of 'Huichica,' containing five and one-half square leagues, and no more, and is bounded and described

as follows, to wit: Bounded on the north by the upper road which goes to Napa, on the east by the Arroyo de los Carneros, on the south by the marshy land adjoining the bay of San Francisco, and on the west by the Estero of Sonoma, as far as the Trancas, taking the direction (*el rumbo* — direction or course) of the Arroyo Seco." A survey of the Huichica grant was made in December, 1858, and approved by the surveyor general in June, 1859 ; and, in accordance therewith, a patent for the Huichica rancho, containing 18,704 acres, was issued by the United States to Leese August 3d, 1859, reciting the second grant, the confirmation and the survey. The westerly boundary, as shown on the plat in that patent, is "the Sonoma Creek, from a post marked L at the lower landing as far as a post marked L at the Trancas; thence a straight line running north 37 degrees east 156 chains to a post marked L on the Arroyo Seco, at the Huichica Hills. This last line is known as the 'Trancas line.'" By quitclaim deeds under Leese, Schell claimed title to 470 acres of the Huichica rancho.

The title of Akers was derived as follows.: In 1835, General Vallejo, director of colonization, under previous instructions from the Mexican governor of California, established the pueblo of Sonoma, and made a survey thereof, with the following boundaries : " On the east the Arroyo. Seco, from the vineyard of Salvador Vallejo to the salt marsh on the bay ; thence along the salt marsh westerly to Sonoma Creek; thence up said creek to the Agua Caliente Creek ; thence easterly by the hills north of the city to place of beginning." He laid out the tract nto lots and blocks, and established families on it, occupying the tract along the Arroyo Seco, in 1835, down to the point where it entered the said salt marsh. On a report of his acts, made by him to the governor, they were approved by the latter. In May, 1852, the authorities of the city of Sonoma presented to the board of land commissioners their claim, as successors of the pueblo, for all of its land, as established by Vallejo. The claim was confirmed by the board, and afterwards, on appeal, by the Circuit Court of the United States for the Northern District of California, November 2d, 1864. These decrees fixed the Arroyo Seco, from the vineyard afore-

said to the salt marsh, as the eastern boundary of the pueblo. A survey of the land was made in September, 1868, and reported to the land department of the United States for approval, in August, 1872. In March, 1876, the Commissioner of the General Land Office, on a conflict before him on the approval of the survey as to the location of the southeasterly line, being the boundary common to the land confirmed to the city of Sonoma and the land known as the Huichica grant, adjudged and determined that such boundary should be established as follows : " A direct line running from the point marked ' Trancas,' on Sonoma Creek, to the point where the Arroyo Seco enters the salt marsh, (Station No. 43 in the amended survey of Rancho Huichica,) and thence following the direction of the Arroyo Seco to the Little Huichica Hills, should constitute the southeasterly boundary of the pueblo of Sonoma;" and directed the surveyor general to make survey of the confirmed claim of the city of Sonoma in accordance with such decision. A resurvey was made, and the commissioner approved it and his former decision of March, 1876, fixing the Arroyo Seco as the boundary between the pueblo of Sonoma and the Huichica grant. No appeal having been taken from that decision, the same became final, and a patent for the pueblo lands was issued by the United States, March 31, 1880, to the mayor and common council of the city of Sonoma, in accordance with the decrees of confirmation and the survey, containing 6063.95 acres. The plat in the patent showed that it covered 423 acres of land embraced in the Huichica patent, being the tract bounded by the " Trancas line," so called, running from post L at the Trancas north 37 deg. east 156 chains to post L, on the Arroyo Seco, by the Arroyo Seco from said post to where it enters the marsh at station 43 aforesaid, and by a line from said station south 70 deg. 45 min. west 81.50 chains to post L at the Trancas. Akers entered into possession of the land described in the complaint, under a contract with the city of Sonoma to purchase it, in 1851, and had occupied it ever since. On the 13th of May, 1858, the city conveyed to him by deed 111 acres of land within the limits of the city as so confirmed and patented, the land sued for being part of such 111 acres. He con-

tinued to reside upon, cultivate and improve the whole of the same up to October 11, 1860, and resided upon, cultivated and improved the west part of the tract so conveyed to him, including the portion sued for by the plaintiffs, ever since 1851. In September, 1860, Schell sued Akers in the Seventh District Court of the State of California, for the county of Sonoma, to recover all of the said tract of land, claiming title thereto under the Huichica patent; and Akers, by his answer in that action, claimed title to the whole thereof under his deed from the city of Sonoma. Whilst the action was pending, and on the 11th of October, 1860, the agreement in writing, before mentioned, was made. On the execution of that agreement, Schell dismissed his action, and a fence was built by the parties, from the lane mentioned in the complaint, extending northerly across the said 111-acre tract and dividing it into two fields of nearly equal size, and Akers surrendered to Schell the possession of all that portion of the 111-acre tract lying east of said fence and embracing about fifty acres, and retained the possession of all the land on the west side of said fence. The Trancas line, being the western boundary of the line patented to Leese, divides the 111-acre tract into two three-cornered pieces, the line running from the southwest to the northeast and crossing the said fence, leaving a portion within the Huichica patent on the west side of the fence in the possession of Akers, and also leaving a portion on the east side of the fence, not embraced within the patent of the Huichica, in the possession of Schell, held by him under the said contract.

Finding 25 was as follows: A piece of land described as follows: Beginning at a point on the northerly line of the lane leading from the house of Theodore L. Schell, deceased, westerly. to the road commonly called "Broadway," 7.63 chains easterly from the intersection of said lane and road; the point where the Trancas line crosses said lane; thence north 37 deg. east along the Trancas line to a point where the said Trancas line crosses the fence heretofore constituting the division fence between Akers and Schell; thence south 5 deg. 45 min. east along said fence to the said lane; thence westerly along the northerly side of said lane 15.61 chains to the place

of beginning — is included within the land described in the complaint. Said piece of land is situated between Arroyo Seco and the Trancas line, and is within the boundaries described in the grant of the Huichica rancho of July, 1844; the decrees of confirmation, the surveys and the patent thereof of August 3d, 1859; also the three deeds under which Schell claimed title to the 470 acres; and is not within the exceptions mentioned in the first of said deeds. Said piece of land is also within the boundaries of the pueblo of Sonoma, established by Vallejo; the decrees of confirmation, the final survey, and the patent of said pueblo, issued March 31, 1880; also the 111-acre tract; and is on the west side of the fence built by the parties.

The court found as follows, as matter of law: That the city of Sonoma has established its claim to the land in controversy, within the meaning of the said contract between Schell and Akers. That, by the terms of said contract, each agreed with the other to abide by the decision of the United States on the said claim of the city of Sonoma for said lands, as then pending before the United States courts, and to abide by the boundary line between them as established on the final confirmation of pueblo lands to the city of Sonoma. That the defendant Stephen Akers is entitled to the possession of all the lands and premises described in the complaint. That all the right, title and interest of Leese in and to all the piece of land described in finding 25, derived to him under the patent of the Huichica rancho, passed to and became vested in Schell on the 18th of January, 1859. That all the title of the city of Sonoma passed to and became vested in Stephen Akers, by deed dated May 13th, 1858, in and to the said tract described in said finding 25. That defendants are entitled to judgment for the possession of all the land described in the plaintiff's complaint, with costs of suit.

The judge of the Superior Court of Sonoma County, in a short opinion given in the case, said: "The court is of the opinion that the contract of the 11th of October, 1860, is conclusive of this controversy. The Huichica patent had issued when that agreement was made, and covered the land in dis-

pute.   Plaintiffs' testator had then all the title which he ever
could acquire.   The parties must have referred to the final
location of the patent of the pueblo of Sonoma, when they, in
their agreement, used the phrase 'in the event the city of
Sonoma establishes her claim to any portion' of said land.
That patent has been finally located, and embraces the land
which is the subject of this suit.   It follows that the defend-
ants should prevail."

The judgment of the Superior Court was that the defend-
ants recover costs from the plaintiffs.   The latter took an
appeal to the Supreme Court of the State, which affirmed the
judgment of the Superior Court, by a judgment to review
which the plaintiffs have brought a writ of error.

The opinion of the Supreme Court, found in the record, and
also reported as *Hale* v. *Akers*, 69 Cal. 160, recites the facts
as found by the Superior Court, and then states that there
are two sufficient answers to the claims made by the plaintiffs.
In its first answer, the court considered the meaning of the
words, "taking the direction of the Arroyo Seco," found in the
second grant, of July 6, 1844, and in the decree of confirma-
tion, and stated that it seemed to it, as it did to the Com-
missioner of the General Land Office, that the line was to run
from the Trancas to the nearest point on the Arroyo Seco,
and thence up that creek or gulch; that, if that were so, then
it is clear that the line as run by the surveyor did not conform
to the decree, but took in lands not covered by the decree;
and that it must follow that to the lands so taken in, the original
concession to the pueblo, and the patent issued upon confirma-
tion thereof, carried the better right.

The second answer which the Supreme Court made to the
claims of the plaintiffs was that the written agreement, before
mentioned, was intended to be, and was, binding upon the
parties, and was decisive of their rights, when it was executed.
The view taken by the court was that when Schell and Akers
executed the agreement, in October, 1860, the Huichica patent
had been issued to Leese, in August, 1859, and Schell had his
deed of January, 1859; that the Sonoma claim had been con-
firmed by the board of land commissioners, in January, 1856,

and took in the land lying between the Trancas line and the Arroyo Seco; that the city was asserting a right to that land, and the case was pending before the courts; that Akers had a deed, given by the city in May, 1858, of 111 acres of the land, and was in possession of them; that under these circumstances the parties compromised the pending suit, by dividing the 111 acres about equally between them, Akers releasing to Schell the eastern half and retaining the western half; that, under the terms of the agreement, the only establishment of the Sonoma claim which the parties contemplated was such as would result from the action of the courts upon it, and the issuing of a patent by the government in pursuance of their decrees; that the parties evidently thought that if the city should finally succeed in establishing its claim, and receive a patent for any of the land within the lines of the Huichica patent, it would have the better title to the land, and that they could, therefore, avoid litigation and expense, and safely await the issue of the city's contest; that they rightly interpreted the law; and that Schell, so long as he lived, acquiesced in the arrangement.

It is contended for the defendants that this court has no jurisdiction of this case. For the plaintiffs it is contended that not only was a Federal question raised in the Supreme Court of the State, but it was decided adversely to the plaintiffs; and that both parties claimed under titles acquired from the Mexican government prior to the cession of California to the United States.

The errors assigned by the plaintiffs are that the Supreme Court of the State erred in adjudging that the Trancas line did not conform to the decree of confirmation of the claim of Leese to the Huichica rancho, made April 22, 1856, by the District Court of the United States; in adjudging that the patent of March 31, 1880, to the mayor and common council of the city of Sonoma, established that the title to the land in controversy was in the defendants, and gave to them a title superior to the title of the plaintiffs under the patent of August 3, 1859, issued to Leese; and in adjudging that Schell and Akers, by their written agreement of October 11, 1860, intended that any

patent which should be thereafter issued to the city of Sonoma, conveying any portion of the land to which Schell then had title under the Huichica patent of August 3, 1859, would or could divest Schell of his title to the land under the Huichica patent, or establish a superior title thereto in the city of Sonoma.

After contending that the court below erred in its decision of the Federal question; that such decision was based upon the facts (1) that the land in dispute was a portion of the pueblo land, and (2) that the lines of the survey of the Huichica grant did not conform to the decree of confirmation; and that, in so doing, the court ignored (1) the power of the Mexican government to divest the pueblo title, and (2) the findings of the lower court that the survey did conform to the decree; the plaintiffs urge that the interpretation by that court of the agreement between Schell and Akers was incorrect, and that it would not have so interpreted the agreement had it not been for its erroneous deduction of law regarding the Federal question, and, therefore, that the decision of the Federal question was the controlling decision of the case.

But we cannot take this view. Both of the courts below decided that, irrespective of the Federal question, the agreement of October 11, 1860, was decisive of the case. The construction of that agreement involved no Federal question, and controlled the whole case.

In *Murdock* v. *City of Memphis*, 20 Wall. 590, 636, this court announced, as one of the propositions which flowed from the provisions of the second section of the act of February 5, 1867, 14 Stat. 386, embodied in section 709 of the Revised Statutes of 1874, and still in force, that even assuming that a Federal question was erroneously decided against the plaintiff in error, the court must further inquire whether there was any other matter or issue adjudged by the state court, which is sufficiently broad to maintain the judgment of that court, notwithstanding the error in deciding the issue raised by the Federal question; and that, if that is found to be the case, the judgment must be affirmed, without inquiring into the sound ness of the decision on such other matter or issue.

This principle has since been repeatedly applied. In *Jenkins* v. *Loewenthal*, 110 U. S. 222, where two defences were made in the state court, either of which, if sustained, barred the action, and one involved a Federal question and the other did not, and the state court in its decree sustained them both, this court said that, as the finding by the state court of the fact which sustained the defence which did not involve a Federal question was broad enough to maintain the decree, even though the Federal question was wrongly decided, it would affirm the decree, without considering the Federal question or expressing any opinion upon it, and that such practice was sustained by the case of *Murdoch* v. *City of Memphis, supra.* See, also, *McManus* v. *O'Sullivan,* 91 U. S. 578; *Brown* v. *Atwell,* 92 U. S. 327; *Citizens' Bank* v. *Board of Liquidation,* 98 U. S. 140; *Chouteau* v. *Gibson,* 111 U. S. 200; *Adams County* v. *Burlington & Missouri Railroad,* 112 U. S. 123; *Detroit City Railway* v. *Guthard,* 114 U. S. 133; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18; *De Saussure* v. *Gaillard,* 127 U. S. 216, 234.

It appears clearly from the opinion of the Supreme Court that it was not necessary to the judgment it gave that the words " taking the direction of the Arroyo Seco " should be construed at all. It is, therefore, of no consequence whether or not that court was wrong in its conclusions as to the meaning of the Huichica grant.

The writ of error is

*Dismissed.*