## BEATTY *v.* BENTON.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 279. Submitted April 18, 1890. — Decided April 28, 1890.

In this case, on a writ of error to review the judgment of the Supreme Court of a State, it was held that no federal question was involved, because the case was decided by the state court on a ground broad enough to maintain the judgment independently of any federal question; and the writ was dismissed.

THE case is stated in the opinion.

*Mr. Salem Dutcher* for plaintiffs in error.

No appearance for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 3d of May, 1854, one Carrie executed and delivered to Elijah D. Robertson, a white man, a warranty deed of a lot of land in Augusta, Georgia, 82 feet 6 inches in width by 200 feet in depth. The consideration expressed in the deed was $600, and it conveyed to Robertson, his heirs and assigns, for- ever, the lot in question, in trust, nevertheless, to and for the sole use benefit and behoof of the following free persons of

color, of Augusta, "to wit, Fanny Gardner, the wife of Thomas Gardner, and their daughter, Frances Gardner, and any future issue of the said Fanny by the said Thomas, and, in case of the death of the said Frances and Fanny, in trust for the next of kin of the said Thomas Gardner." The deed also authorized Robertson, in case it should be deemed advisable and to the interest of all concerned that a sale of the property should take place, to sell and make titles to it, provided the consent of the said Frances and Fanny, their guardian or guardians, should be first had and obtained.

In March, 1879, Fanny Gardner filed a bill in equity, in the Superior Court of Richmond County, Georgia, setting forth the purchase of the lot of land by Gardner from Carrie, for $600, and the making of such deed; that Gardner, who was her husband, and the father, by a former wife, of Frances Gardner, who had intermarried with one Beatty, died in 1865; that all of those persons were free persons of color; that, on the 3d of May, 1854, Gardner and the plaintiff and Frances took possession of the property; that afterwards, Frances having married, Gardner divided the lot and erected a house on a part of it for Frances; that the parties thus continued in possession of the property until the death of Gardner; that from that time Frances had remained in the possession of the portion of the lot on which the house was erected for her use, and the plaintiff had occupied the remaining part of the lot; that the deed to Robertson was void, because at that time all conveyances of real estate in Augusta to or for the use of free persons of color residing therein were prohibited by law; that the plaintiff acquired title to the property occupied by her, by actual adverse possession of the same for twenty years, and Frances had acquired title in the same way to the premises occupied by her; that the plaintiff desired to sell her part of the property, but could not do so, because Frances claimed that, under the terms of the trust deed, she owned a remainder interest in the whole of the property, and the plaintiff had only a life estate therein; and that the property could not be sold except with the consent of Frances.

The bill prayed for a decree that the plaintiff owned a fee-

simple title to the portion of the lot so occupied by her; that the trust deed be cancelled; that, if the court should hold that the title of the plaintiff and of Frances was derived from seven years' possession under the trust deed, as color of title, it would decree that the terms of such deed did not bind the plaintiff or limit her title in the property; that, if the plaintiff did not have a fee simple title to the part in her possession, she and Frances might be decreed to be tenants in common of the entire property, and the same might be divided by commissioners, or be sold and the proceeds divided, share and share alike, between the plaintiff and Frances, and for general relief.

The bill was afterwards amended by inserting an allegation that the plaintiff furnished to Gardner at the time of the purchase one-half of the purchase money of the property, the same being the proceeds of her labor as a free person of color; and further, that if the court held that the plaintiff acquired no legal interest under the division of the lot by Gardner, in the part which he gave to her and on which she had since lived, and no interest that could ripen by prescription, then Gardner died in possession of all of the lot, leaving the plaintiff and Frances as his only heirs; that such heirs had, by tacit consent, actually occupied, held and claimed the portions so divided to them by Gardner, from the time of his death; and that Gardner made no will and left no other heirs.

Frances, being then the wife of one Davis, answered the bill, denying that the property was ever divided between her and the plaintiff by Gardner, or since his death, otherwise than that Gardner built another house for her on the property, for convenience, because she was married and had many children; and that her title and that of the plaintiff was that of co-cestuis que trust for life, with remainder over to the children of Frances who should be living at the termination of such equitable life estate.

By way of cross-bill, the answer averred, that, before January 1, 1863, no proceedings were ever instituted to escheat the property as being conveyed for the benefit of free persons of color; that, by section 2627 of the Code of Georgia, becom-

ing of force on January 1, 1863, it was declared that escheat
should lie only on failure of heirs; that by the act of Georgia
of March 17, 1866, free persons of color were vested with all
the property rights of white persons; that among those rights
was that to a prescriptive title by adverse possession for seven
years under written evidence of title; that by possession ad-
verse to all the world, under the trust deed, for seven years
and more prior to the bringing of the bill, the plaintiff and
Frances had a good prescriptive title to the property under
the limitations of the deed, and had an equitable life estate
in common, with remainder in fee, on their death, to the next
of kin of Gardner; that Frances had six children then living,
two of them by her first husband, Beatty, one of whom was
an adult and the other a minor, and four of them by her hus-
band, Davis, all of whom were minors, such six children being
the next of kin after Frances to Gardner, their grandfather;
and that Gardner had no issue by the plaintiff.

The answer prayed that the court might declare the trust to
be valid, and appoint a trustee to hold the property for the
joint use and benefit of the plaintiff and the defendant during
their lives, or the life of either of them, and, at the termina-
tion of such lives, to convey the property to such children of
the defendant as might then be living, and, should there be
none such, then to whoever should be next of kin to Gardner;
and that the adult son of the defendant be made a defend-
ant, with a guardian *ad litem* to be appointed for her minor
children.

The answer was afterwards amended by averring that Gard-
ner died in November, 1865; that from the date of the trust
deed to that time the plaintiff and the defendant and Gardner
resided together on the lot, being in occupation of it under
and by virtue only of the trust deed; that, from the time
Gardner died until the bringing of the suit, the plaintiff and
the defendant continued to occupy the lot; that more than
seven years elapsed from the death of Gardner to the bring-
ing of the suit; that under the laws of Georgia, as they existed
from the date of the trust deed, any instrument in writing pur-
porting to convey a title to land, even if void, was good as

color of title, and adverse possession of the land thereunder for seven years gave a good title by prescription to the land; that, under the first section of the act of Congress of April 9, 1866, all persons within the jurisdiction of the United States became entitled to the equal benefit of all laws and proceedings for the security of person and property as was enjoyed by white citizens, and all citizens of the United States became entitled in every State to the same rights as were enjoyed by the white citizens thereof, as respected real and personal property; that, under the first section of the 14th article of amendment to the Constitution of the United States, it was provided that no State should make or enforce any law which should abridge the privileges or immunities of citizens of the United States, nor deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; that under said act of Congress and said amendment the defendant became entitled to the same rights, as to prescriptive title by possession under color of title, as any white person; that under said act of Congress and said amendment, the act of Georgia of December 19, 1818, and that of December 22, 1819, could not be lawfully enforced as against the rights of the defendant under the trust deed as color of title, even if the deed were originally void; and that, under said act of Congress and the 14th amendment, the plaintiff and the defendant, under the trust deed, and their occupancy of the lot thereunder for seven years after the death of Gardner, had an equitable life estate in common in the lot, with remainder in fee to the next of kin of Gardner.

The answer was also amended by averring that the claim of the plaintiff that she had furnished to Gardner, at the time of the purchase, one-half of the purchase money of the property, was barred by the statute of limitations, the claim being first asserted by an amendment to the bill, made June 28, 1884, more than thirty years after the purchase of the property by Gardner; and that the plaintiff was estopped by laches from asserting such claim.

A guardian *ad litem* was appointed for the minors, and he

and the adult Beatty were made defendants. The case was tried by a jury. The court at the trial charged the jury as follows: "Under the law in force at the time of making this deed, free persons of color could not hold real estate, and the deed from Carrie to Gardner in trust was absolutely void; and the fact that the war and its results, as declared by the constitution of the United States and the acts of our own legislature, have put all colored persons on the same footing with white persons, does not and cannot make the laws invalid or validate any title acquired under them, and no continuance of possession for any number of years by the wife and daughter under this void deed can ripen it into a good title. The transaction being illegal and void, no act of either and no post-war enactments can galvanize it into life. If you believe that Thomas Gardner paid Carrie for this land, it being admitted that there were no proceedings before 1860 to escheat this property, and remained in possession of the land until after the close of the war, and died in November, 1865, then, notwithstanding the law which made a trust deed void, and he died in possession of the land, the wife and daughter took this estate by inheritance absolutely, each being entitled to one-half. If the evidence does not show that, but shows that Thomas Gardner paid the purchase money and went into possession, and then divided the lot between Fanny and Frances, and that they both went into possession and remained in possession until after the war closed and are still in possession, Frances is estopped from denying the title of Fanny to the one-half now claimed by her; so that you see that my view of the law is that the trust deed cannot be enforced or be made the basis of any title. If, therefore, you find for the complainant, Fanny, you may appoint three discreet persons to make the division of the lot, providing for a sale in case no division of the kind can be made."

The defendants requested the court to charge the jury as follows, which requests were declined: "2. If you find, from the evidence in this case, that Thomas Gardner bought this land for the joint use of Fanny and Frances during their lives, and at their death to go to his next of kin, and had the deed of 1854 made to carry out this purpose, and that Frances and

Fanny entered on the occupancy of the land by virtue of the deed, and were in the occupancy of the land under the deed at the time free persons of color became entitled to equal property rights under the law with white persons, and remained in such possession and occupancy for seven years thereafter, then I charge you that, even if the deed itself were void, they obtained a good prescriptive title such as set out in the deed — that is, a good prescriptive title to the joint use and enjoyment of the land during their lives. The fact that the deed was void, or that Fanny or Frances were free persons of color, in nowise prevents such a prescriptive title as stated accruing to them, if the evidence shows the facts above stated. 3. Whenever two persons are from any cause entitled to the possession simultaneously of any property in this State, they are tenants in common, and each entitled to the use and enjoyment of one-half of the common property, and are each liable for one-half of the burdens imposed by law on the common property, such as taxes. If, therefore, you find, from the evidence in this case, that Fanny and Frances became simultaneously entitled to the possession of this property, they were tenants in common, equally entitled to its benefits and equally liable for its burdens. If you find that one lived on one half and one on the other, this is nothing more than the law entitled them to; and if one paid the taxes on her half and the other on hers, this is nothing but what the law required them to do. The fact of one living on one half and the other on the other, or of one paying the taxes on one half and the other the taxes on the other, no matter how long this was kept up, would not give either one a fee-simple title to the particular half on which she lived and paid taxes. At the end of half a century they would still be tenants in common, each having the right to possess the joint property and to use and enjoy one-half of it. No tenant in common can set up an exclusive right by prescription against his cotenant in the whole or any part of the property, unless he actually ousts his cotenant, or expressly notifies his cotenant that he holds adversely to his rights, or unless he assumes exclusive possession of the whole property, and refuses to admit his cotenant

to his rightful participation, after the cotenant demands such admission. If, therefore, you find that Frances and Fanny became simultaneously entitled to the use and enjoyment of this lot, they were tenants in common and are so still, unless you find that Fanny has taken some of the steps above mentioned against Frances, and followed it up with adverse possession for seven years under color of title or twenty years without it. 4. The next of kin to Thomas Gardner, as the words are used in the deed of 1854, mean his nearest blood relations after his own child Frances. A man's nearest blood relations after his own children are his grandchildren. Thomas Gardner's grandchildren are parties respondent to this bill. If Fanny and Frances are tenants in common for life in this land, these grandchildren, should they outlive them, would be entitled to the land, share and share alike. Fanny claims that she has a fee-simple interest in a part of this land, by possession thereof for twenty years, and consequently there is no remainder in this part for the next of kin. You cannot find that Fanny has a fee-simple interest in any part of this land by adverse possession for twenty years. unless you find that she has been in such possession of such part for the full period of twenty years from the time that free persons of color became vested in this State with the same property rights as white persons. 5. If you find that a good prescriptive title has arisen under this trust deed, the effect is, that Fanny and Frances will each be entitled for life to the use and enjoyment of one-half of the property, and at their death it goes to the next of kin of Thomas Gardner. If you find that Fanny has a fee-simple interest in that part of the lot whereon she now resides, the next of kin of Thomas have no rights whatever therein. Fanny may dispose of it while living as she pleases, and if she dies intestate it would go to her next of kin. 6. If you find, from the evidence, that the complainant did not set up any claim to the property in dispute, by having furnished part of the purchase money, until twenty years had expired from the time the purchase was made, I charge you that she is now barred by the statute of limitations from setting up title to the property, for that reason."

·The jury found the following verdict: "We, the jury, find for the complainant the exclusive right and fee-simple title to that portion of said property now occupied by her." The defendants moved for a new trial, alleging as grounds therefor error on the part of the court in charging the jury as set forth, and in refusing to charge them as requested. The motion for a new trial was overruled, and a judgment was entered to that effect. The defendants excepted to the judgment, and a bill of exceptions was made and certified to the Supreme Court of Georgia, to which the defendants took the case by a writ of error. The plaintiff having died, leaving a will which was duly admitted to probate, her executrix and sole legatee, Georgia Benton, was made a party in her place. The case was heard in the Supreme Court, and it affirmed the judgment of the Superior Court of Richmond County, in an opinion reported in 73 Georgia, 187, which was as follows: "This is a bill filed by Fanny Gardner against Frances Beatty and children, to settle her title to one-half of a lot in Augusta, occupied by her, while Frances occupied the other half. The lot was bought by Thomas Gardner, deceased, in 1854, and one-half the purchase money was paid by him, and the other half by complainant, who was his wife. Frances, the defendant, was the daughter, by a former wife, of deceased, and married Beatty afterwards. Up to that time the lot was one, only one house being on it; then it became crowded and was divided, and a house built for Beatty and wife, who occupied it ever since. All the parties were free persons of color before the war. When the purchase was made in 1854, a deed was taken to the property in the name of Robertson, trustee, a white person, to the use of Fanny and Frances for life, and then to the next of kin of Thomas Gardner. If that trust deed was valid when made, the complainant only had a life estate, and having died and left a will since this writ of error was brought, she and her executrix now can take nothing. So that the verdict and decree, being that she shall keep the half set apart to her in the division, and so long in her possession, is wrong, if that trust deed be operative.

"1. Under the decision of this court in *Swoll et al.* v. *Oliver*

*et al.*, 61 Georgia, 248, that deed, as the law of Georgia stood in 1854, was void. So, in *Planters' Loan and Savings Bank* v. *Johnson*, 70 Georgia, 302, (an Augusta case,) the same point is decided emphatically, based on the act of 1818, Cobb's Digest, p. 993. Therefore, the trust deed is out of the way.

"2. When the law freed slaves in Georgia and put free persons of color, as to real property, on the same footing as whites, this lot, as divided, was in possession of these two colored women, a moiety with a house on it, erected by the husband and father, in possession of each. The primary element of title, possession, being thus in each, and the State never having escheated the property whilst the old law stood, this possession is good against the claim of all others, and the verdict and decree giving each her several share is right.

"3. The decree is all the more equitable, because complainant paid one-half of the purchase money. Cases of this sort, under the anomalous condition of such property remaining in the possession of a class of persons who could not formerly hold title thereto, should be adjudicated under broad views of natural equity.

"There is nothing in the minor points made by the able and indefatigable counsel for plaintiffs in error which can unsettle the result which the above principles necessitate, we think, as the law of this case. Judgment affirmed." To review such judgment of affirmance the defendants have brought a writ of error.

We are of opinion that this writ must be dismissed, because no federal question is involved. The Supreme Court of Georgia decided that, if the trust deed was valid when made, the plaintiff took under it only a life estate, and that that had ceased by her death; that the deed, however, was void under the Statute of Georgia which existed when the deed was made in 1854; that, therefore, the trust deed was entirely out of the way; that at the time it became the law of Georgia that free persons of color were put, as to real property, on the same footing as white persons, each of the two women was in possession of a part of the lot, each part having a house upon it; that, as the State had never enforced an escheat of the property, such

possession of each of the parties was good against the claim of all other persons; and that, therefore, the verdict and judgment, which gave to each her several share in fee-simple title to the part of the property which was in her occupation, was right.

We see nothing in these conclusions of the state court which raises any federal question. The construction of the trust deed, and the question of its validity under the statutes of Georgia of 1818 and 1819, were matters for the exclusive decision of the Supreme Court of that State; and the case was decided upon the rights of the parties as they existed by virtue of the acts of Gardner, and of their own acts, during his lifetime, and as they stood at the time of his death in 1865, and thereafter, down to the bringing of this suit in 1879. The rights thus adjudicated existed and were passed upon independently of the act of Congress referred to, and of the 14th amendment to the Constitution, and were not, and could not be, affected by any provisions thereof. The case was decided against the plaintiffs in error on an independent ground, not involving a federal question, and broad enough to maintain the judgment. In such a case, even though the state court also decides a federal question against the plaintiffs in error, this court dismisses the writ of error without considering the federal question. *Marron* v. *Brinkley*, 129 U. S. 178, 181; *Hale* v. *Akers*, 132 U. S. 554, 565, and cases there cited; *San Francisco* v. *Itsell*, 133 U. S. 65, 66; *Hopkins* v. *McLure*, 133 U. S. 380, 386.

*Writ of error dismissed.*