## HAMMOND v. JOHNSTON.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 114. Argued November 25, 30, 1891. — Decided December 14, 1891.

In an action of ejectment in a state court in Missouri, both parties claimed under the New Madrid act, February 17, 1815, 3 Stat. 211, c. 45. In 1818 one Hammond entered on the premises, and occupied it until about 1825, claiming title from one Hunot, whose claim, under a Spanish grant, was confirmed by Congress, April 29, 1816, 3 Stat. 328, c. 159. The plaintiffs claimed as heirs of Hammond. The defendant claimed under an execution sale on a judgment obtained in a state court against Hammond in 1823, under which possession had been taken and maintained. This was fortified by a patent issued, in 1859, to Hunot, or his legal representatives. At the trial of the action in the state court, it was held that, although the legal title to the tract in dispute was in the United States at the time of the sale under the execution, yet Hammond had an equitable interest in it, which was subject to sale under execution, and that, under the statutes of Missouri, the sheriff's deed passed all his interest in the premises to the purchaser. Some Federal questions were also raised and decided adversely to the plaintiffs. Judgment being rendered for the defendant, the plaintiffs sued out this writ of error. *Held*, that this ruling of the state court involved no Federal question, and was broad enough to maintain the judgment, without considering the Federal questions raised, and that the writ of error must, therefore, be dismissed for want of jurisdiction, — following *Hopkins* v. *McLure*, 133 U. S. 380; *Hale* v. *Akers*, 132 U. S. 554; and *Henderson Bridge Co.* v. *Henderson City*, 141 U. S. 679.

THE court stated the case as follows:

This was an action of ejectment, for a lot described, brought in the Circuit Court of St. Louis County, June 15, 1874.

The facts necessary to be considered in the disposition of the case are as follows: Joseph Hunot claimed a head right of 800 arpents of land, under the Spanish government, dated in 1802, and located in what is now New Madrid County, Missouri. On May 12, 1810, he conveyed this land by warranty deed to Joseph Vandenbenden, and on November 4, 1815, Vandenbenden conveyed the same by a like deed to Rufus Easton. January 31, 1811, the claim was presented for confirmation to the

old board of commissioners and rejected; but on November 1, 1815, Recorder Bates recommended the claim for 640 acres for confirmation, and it was confirmed by act of Congress of April 29, 1816, 3 Stat. 328, c. 159. August 12, 1816, Recorder Bates issued a certificate, No. 161, stating that the tract had been materially injured by earthquakes, and that under the act of Congress of February 17, 1815, 3 Stat. 211, c. 45, Joseph Hunot, or his legal representatives, (who had already received a certificate for 160 acres,) were entitled to locate 480 acres of land on any of the public lands of the Territory of Missouri, the sale of which was authorized by law. On June 16, 1818, Rufus Easton made application to the surveyor general to locate the said certificate on certain lands in township 45, range 7 east, being the same on which it was subsequently located. June 23, 1819, Joseph C. Brown, United States deputy surveyor, returned to the surveyor general's office a plat and description of the 480 acres surveyed for Joseph Hunot or his legal representatives. This survey, which was numbered 2500, was returned to the recorder of land titles on January 8, 1833, and on February 2, 1833, Frederick R. Conway, the recorder, issued and delivered to Peter Lindell patent certificate No. 404, for said survey, in favor of Joseph Hunot or his legal representatives. July 10, 1819, Rufus Easton and wife, by deed of that date, conveyed to William Stokes 234 acres of this survey, described particularly by metes and bounds. September 29, 1823, Rufus Easton, by deed of that date, acknowledged October 9, 1823, and recorded February 9, 1824, in which he recited that he had previously, on September 3, 1818, executed his bond to Samuel Hammond and James J. Wilkinson for the same land, conveyed to Samuel Hammond 240 acres, being the whole of the Hunot survey, as located by Rufus Easton by virtue of certificate No. 161, except 234 acres of the tract, which he had conveyed to Stokes. The lot in question in this suit is part of the 240 acres. Samuel Hammond occupied, fenced and cultivated this land between 1818 and 1823. In 1824 or 1825 he left St. Louis and went to South Carolina, where he continued to reside until 1842, when he died leaving five children. On the 12th of

March, 1819, Relfe, Chew and Clark instituted suit against Samuel Hammond in the St. Louis Circuit Court, which resulted in a judgment against him for the sum of $6841.80½, which judgment was finally affirmed by the then Supreme Court at the May term, 1823. An execution was issued on this judgment, May 23, 1823, and delivered to the sheriff of St. Louis County, by virtue of which he levied upon the 240 acres, as the property of Samuel Hammond, and, after advertisement, the land was sold by him, October 8, 1823, to Relfe and Chew, who were the highest and best bidders for the same, whereupon the sheriff executed his deed to said purchasers in due form of law, dated November 4, 1823. This deed was duly acknowledged and recorded. The land was subsequently sold and conveyed by Relfe and Chew to Peter Lindell, to whom Joseph Hunot and wife had also conveyed. On August 30, 1859, on Lindell's application, a patent was issued by the United States and recorded in the General Land Office, conveying the said survey, with certain exceptions, to Joseph Hunot or his legal representatives. The patent, although dated August 30, 1859, was under consideration in the Department of the Interior until November 12, 1860, when the Secretary decided in favor of issuing it.

Plaintiffs in error derive their claim to the land as heirs of Samuel Hammond or through conveyances made in 1873 and 1874 by such heirs. The defendants Johnston and Baker claim title to the particular lot sued for under one of the heirs of Peter Lindell.

The trial of the action having resulted in a judgment for the defendants, the case was taken to the Supreme Court of Missouri on appeal, by which court the judgment of the Circuit Court was affirmed. The opinion will be found reported in 93 Missouri, 198. Thereupon a writ of error was sued out from this court.

The errors assigned here are: First, that the Supreme Court erred in holding that Hammond had any title to the land in controversy, which could be levied upon by the sheriff and sold upon execution against him, for the reason that the United States survey No. 2500, made under said certificate

No. 161, was not returned to the recorder of land titles for the Territory of Missouri until January 8, 1833, and recorded February 2, 1833; Second, that the court erred in holding that the patent to Joseph Hunot or his legal representatives, dated August 30, 1859, though not delivered until 1860, took effect from its date, by which error it was claimed that Samuel E. Hammond, one of the original plaintiffs, who lived in Tennessee, was erroneously held to be barred.

The Supreme Court of Missouri considered, in its opinion, and overruled, certain objections of plaintiffs to the deed of the sheriff under the execution in the suit of Relfe, Chew and Clark v. Hammond. These objections were that only a certified copy of the deed was offered in evidence; that the deed was void for uncertainty of description; that, at the time of the sale under the execution, Hammond had no interest in the land subject to sale; and that Easton had no interest in the property, because the surveyor general had not, at the date of Easton's deed to Hammond, returned a plat of the survey to the recorder of land titles, and did not do so until 1833.

Plaintiffs in error contended that, at the time when Easton conveyed to Hammond, and when the sheriff sold the land under the execution, the title to the land was in the United States. The court conceded that the legal title was in the United States, but held that there was an equitable interest in Easton and those claiming under him, which was subject to sale under execution, and that, under the statutes of Missouri, the sheriff's deed was effectual in passing to the purchaser all the estate and interest which the debtor had at the time of the judgment. And the court used this language: "Under the view we have taken of the sheriff's deed, and the force and effect we have given to it, the title is in the defendants, and the judgment will be affirmed. This result as to the effect of the sheriff's deed rendered it unnecessary to pass upon the other question presented by the record, but we have ruled upon them in order that there may be no embarrassment to either party in a review of this judgment in the Supreme Court of the United States."

*Mr. George F. Edmunds* and *Mr. D. J. Jewett* (with whom was *Mr. Henry H. Denison* on the brief) for plaintiffs in error.

On the trial of this case, the plaintiffs in error asked the trial court to give the following instructions: "The court is requested to declare the law to be, that, under all the documentary evidence in the case, there was in 1823 no legal nor equitable title in Samuel Hammond to any part of the land in what is known as United States survey No. 2500, in the city of St. Louis, and for that reason (having no reference to any other) no title, legal or equitable, to any part of said land, was acquired by the purchasers under the levy and sale by Sheriff Walker, on execution against said Hammond, in September and October, 1823, as put in evidence by defendants in this case." This instruction was given by the trial court, but was overruled by the Supreme Court.

The defendants also asked the trial court to give, and that court gave the following instruction: "When the patent to Joseph Hunot, or his legal representatives, read in evidence by defendants, was issued, the same related at least as far back as the time of the passage of the Act of Congress of April 26, 1822, if not to June 23, 1819, which is the time the field survey was made of the land for which said patent was issued." This instruction was given by the trial court, and was sustained by the Supreme Court of Missouri, as appears by their opinion.

Thus it appears that the vital question at issue, fatal to one side or the other, is the proper construction and meaning, the force and effect, of the Act of Congress of February 17, 1815, before referred to, and known as the New Madrid Act. That is to say, whether or not there was on the 8th day of October, 1823, any title out of the United States by virtue of the provisions of said act, that would be called an equity under the laws of Missouri, and subject to sale on execution.

It also fully appeared by the opinion of the Supreme Court of Missouri, that in giving judgment against the rights claimed by the plaintiffs in error, under the said New Madrid statute,

they construed the force and effect of that statute, and denied to the plaintiffs in error the right they claimed under it, and, as plaintiffs allege, misconstrued said statute so as to give rights to the defendants in error under it, to which they were not entitled under the provisions of said law.

The case of *Murdock* v. *The City of Memphis*, 20 Wall. 590, is considered a leading case upon the question of jurisdiction, and in that case this court says (p. 637): Plaintiffs claim a right under an act of the United States which was decided against them by the Supreme Court of Tennessee, and this claim gives jurisdiction to this court. Of course, the right claimed must involve the construction of a statute of the United States. The plaintiffs in error here claim a right to this land under the proper construction of the before named New Madrid statute. See also *Rector* v. *Ashley*, 6 Wall. 142; *Lessieur* v. *Price*, 12 How. 59; *Gibson* v. *Chouteau*, 13 Wall. 92.

*Mr. J. B. Henderson* for defendant in error. *Mr. James L. Lewis* also filed a brief for same.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is well settled that where the Supreme Court of a State decides a Federal question in rendering a judgment, and also decides against the plaintiff in error upon an independent ground not involving a Federal question and broad enough to maintain the judgment, the writ of error will be dismissed without considering the Federal question. *Hopkins* v. *McLure*, 133 U. S. 380; *Hale* v. *Akers*, 132 U. S. 554; *Henderson Bridge Co.* v. *Henderson City*, 141 U. S. 679.

Tested by this rule,

*The writ of error must be dismissed, and it is so ordered.*