HAMMOND *v.* CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

HAMMOND *v.* GORDON.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Nos. 937, 938. Submitted December 11, 1893. — Decided December 18, 1893.

The court follows *Hammond v. Johnston*, 142 U. S. 73, on a substantially similar state of facts, and holds that the ruling of the state court was broad enough to maintain the judgment, without considering the Federal question.

MOTION to dismiss. By stipulation of counsel in No. 938, both cases were heard on the printed record in No. 937, it being "agreed that for all purposes of trial . . . the records in both cases are identical."

The Supreme Court of Missouri in its opinion in that case said: "The facts of the case, so far as they are material to the questions raised in this court, are these:

"Joseph Hunot claimed a head-right, under a concession dated in 1802, for 800 arpens of land in what is now New Madrid County. In 1810 he conveyed the land to Joseph Vandenbenden. The claim was presented to the first board of commissioners for confirmation, but the board rejected and disallowed it on the 31st January, 1811. It was presented again to Frederick Bates, recorder of land titles, and by him approved and recommended for confirmation on the 1st November, 1815. The claim was then confirmed by the act of Congress of April 29, 1816. Prior to the confirmation

Vandenbenden conveyed the land to Rufus Easton by a deed dated the 4th November, 1815. It is conceded that the effect of this confirmation by Congress was to vest the legal title to the land in Easton.

"The land having been injured by earthquakes, Easton sought to exchange it for other lands under the provisions of the act of Congress of February 17, 1815, entitled 'An act for the relief of the inhabitants of the county of New Madrid, in the State of Missouri, who suffered by earthquakes.' On the 12th August, 1816, the recorder of land titles issued a certificate stating that Joseph Hunot or his legal representatives were entitled to locate 480 acres under the provisions of said act. This certificate is known as New Madrid certificate No. 161.

"On the 16th June, 1818, Rufus Easton, as the legal representative of Hunot, made application to locate the certificate on 480 acres of land, giving a general description of the land in the application. The deputy surveyor surveyed the land, and on the 23d June, 1819, certified this survey to the surveyor general. This survey was designated and is known as survey No. 2500. The surveyor general transmitted this survey — and the plat made a part of it — to the recorder on the 8th January, 1833. The latter recorded the same on the 2d February, 1833, and on that day issued a patent certificate to Joseph Hunot or his legal representatives for the 480 acres. This patent certificate was delivered to Peter Lindell, and it was forwarded to the General Land Office. Conflicting claims were interposed, so that the patent was not issued until the 13th August, 1859.

"As has been stated, Easton signified his desire to locate his certificate on the land on the 16th June, 1818, and the survey and plat were made on the 23d June, 1819, but the plat and survey were not filed with the recorder until early in January, 1833. Rufus Easton, by his warranty deed, dated the 29th September, 1823, acknowledged by him and his wife on the 9th October, 1823, and recorded on the 9th February, 1824, conveyed 240 of the 480 acres to Samuel Hammond. This deed contains a recital that it was made 'in consideration of $1583 to him in hand paid by said Samuel Hammond and pursuant

to the conditions of a certain bond executed by the said Rufus Easton to said Samuel Hammond and James I. Wilkerson, dated September 3d, 1818.' On July 10, 1819, Easton con-- veyed the residue of the 480 acres to William Stokes. There is evidence that Hammond went into possession under his title bond and remained in possession for several years. On the 8th October, 1823, the sheriff sold the 240 acres to Richard Relf and Beverly Chew by virtue of an execution issued upon a judgment against Samuel Hammond, and executed to them a deed dated the 4th November, 1823. Relf and Chew con- veyed the land to Peter Lindell in March, 1840. Lindell also held a deed to the land from Hunot, dated in 1834, and it appears that Lindell took possession at that date and contin- ued his possession until his death, in 1861. The lot in ques- tion is part of the 240 acres, and was set off to one of the heirs of Lindell in the partition of that estate. The plaintiffs have acquired all the title of such heir by deeds in due form.

" The defendants claim title by deeds from the heirs of Sam- uel Hammond, obtained since 1870. They got possession of the land in 1879 by virtue of an execution on a judgment in an ejectment suit against the tenant of the heir of Lindell, to whom the lot had been assigned in the partition suit. The bank brought this suit to regain possession in 1882.

" 1. From the foregoing statement it will be seen that all parties to this suit claim under Samuel Hammond; the defend- ants through the heirs of Hammond, and the plaintiffs under the sheriff's deed. The title is with the defendants, unless the sheriff's deed divested Samuel Hammond of his interest in the land. . . . We hold that the bond recited in the deed vested in Hammond an interest in the land which was subject to sale under an execution.

" 2. The defendants insist, in the next place, that there was not a particle of title, legal or equitable, out of the United States and in Hammond at the date of the execution sale, and that he had nothing which could be sold, because the surveyor general did not file the survey with the recorder until early in 1833, which was about ten years after the land was sold under the execution. . . . The claim that the doctrine of rela-

tion can have no application to a New Madrid location prior to the return of the survey to the recorder is, in our opinion, not well founded and not supported by any of the authorities cited to prove that proposition. Right and justice calls for the application of the rule in this case, and no reason is seen why it should not be applied.

"The foregoing objections to the sheriff's deed were considered in the case of *Hammond* v. *Johnston*, 99 Mo. 198, but we have travelled over the ground again in view of the great value of the property involved and the earnest arguments made on the hearing of this case.

"3. There is another objection to the sheriff's deed not made or considered in the Hammond-Johnston case, and that is this, that it is void because the execution issued out of the Supreme Court instead of out of the circuit court. . . . We hold that the sale was and is valid in this collateral proceeding, and in saying this we assume that it appears from the sheriff's return that the first piece of property sold brought more than enough to pay the costs, and that it appears from that return that the property in question was the second piece sold.

"With the foregoing conclusions it follows that the judgment should be, and it is, affirmed."

The judgment thus affirmed was in accordance with the judgment of the Supreme Court of the State of Missouri which was before this court in *Hammond* v. *Johnston*, 142 U. S. 73.

*Mr. J. B. Henderson*, for the defendants in error, moved to dismiss both actions upon the ground that "the whole question of title, in the judgment of the Missouri court, turned on the validity of the sheriff's sale," which was "a question purely of state law and not reviewable in this court:"

*Mr. D. T. Jewett* and *Mr. Leverett Bell* opposing.

THE CHIEF JUSTICE: The writs of error are dismissed upon the authority of *Hammond* v. *Johnston*, 142 U. S. 73.