## HOPKINS v. McLURE.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 126.   Argued November 20, 1889. — Decided March 3, 1890.

Where the Supreme Court of a State decides against the plaintiff in error on an independent ground, not involving a Federal question, and broad enough to maintain the judgment, the writ of error will be dismissed by this court without considering the Federal question.

In this case, the Supreme Court of the State held that the law was not changed by an isolated decision made by it, because such decision was an erroneous declaration of what was the law; and on that view this court held that no Federal question was presented by the record, and the writ of error was dismissed.

THE case is stated in the opinion.

Mr. *William E. Earle* for plaintiff in error.

Mr. *John J. Hemphill* for defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 9th of July, 1876, George W. Melton died, intestate and insolvent, in South Carolina, leaving surviving him his widow, Margaret A. Melton, and three infant children.   John J. McLure was appointed administrator of his estate, and commenced an action in the Circuit Court of Chester County, South Carolina, in July, 1877, to marshal the assets of the estate, to have the real property of the deceased sold in aid of assets, and to have the creditors of the estate establish their demands. The creditors were called in, and numerous claims were established, among them, a note under seal to R. G. Ratchford & Co., bearing date February 22, 1859; a note under seal to Dr. A. P. Wylie, bearing date May 3, 1872; a note under seal to Samuel D. Melton, bearing date February 1, 1871; a bond secured by a mortgage on real estate to one Duvall, sheriff, dated June 4, 1875, which had been transferred to one Kerr, as clerk of the court of Fairfield County, South Carolina; and

a bond secured by a mortgage on real estate to Hopkins, Dwight & Co., dated May 19, 1876. The widow and the infant children, and various creditors of the deceased were made defendants. The case was referred to a special referee, who reported that the assets of the estate could not exceed $11,000; that the amount due on the mortgage to Duvall, sheriff, was $1087.35, and the amount due on the mortgage to Hopkins, Dwight & Co. was $30,748.44; and that there were debts on sealed notes and specialties dated prior to November 25, 1873, amounting to $7005.04, and debts on simple contracts amounting to $36,415.98, the total of the three classes of debts being $75,256.81. The special referee reported that, after the payment of the costs, the assets were applicable first to the satisfaction of the bond and mortgage to Duvall, sheriff, and next to the bond and mortgage to Hopkins, Dwight & Co. Exceptions were filed by various creditors to the report of the referee, and the case was heard by the Circuit Court.

It appeared that the mortgage to Hopkins, Dwight & Co. had been foreclosed by a judicial sale of the land covered by it; that the proceeds of the sale were insufficient to pay the debt; that the debt and the mortgage were set up as a preferred claim against the general assets in the hands of the administrator; that the land covered by the mortgage held by Kerr as clerk was sold under an order of the court before Kerr became a party to the suit by proving his debt and mortgage; that, after that sale, Kerr, not having obtained its proceeds, instituted proceedings to foreclose the mortgage, obtained judgment, and sold the land, but the proceeds of sale were insufficient to pay the mortgage debt; and that Kerr set up the debt as a preferred one against the general assets of the estate.

The Circuit Court said, in its opinion, that the referee held that both of these debts were preferred claims, on the authority of the case of *Edwards* v. *Sanders*, 6 So. Car. 316; and it discussed the question whether the mortgage debt of Hopkins, Dwight & Co. was a preferred claim after its specific lien had been exhausted, because it was a mortgage.

Section 26 of the act of South Carolina, which became a law

March 13, 1789, being act No. 1455, entitled " An act directing the manner of granting probates of wills and letters of administration, and for other purposes therein mentioned," (Stat. at L. of So. Car. 1839, v. 5, p. 111,) provided as follows : " That the debts due by any testator or intestate shall be paid by executors or administrators in the order following, viz. : funeral and other expenses of the last sickness, charges of probate of will or of the letters of administration; next, debts due to the public; next, judgments, mortgages and executions, the oldest first; next, rent; then, bonds or other obligations; and lastly, debts due on open accounts; but no preference whatever shall be given to creditors in equal degree, where there is a deficiency of assets, except in the cases of judgments, mortgages that shall be recorded from the time of recording, and executions lodged in the sheriff's office, the oldest of which shall be first paid, or in those cases where a creditor may have a lien on any particular part of the estate."

This provision was construed by the Constitutional Court of South Carolina, in 1822, in the case of *Tunno* v. *Happoldt*, 2 McCord, 188. In that case, the deceased left an outstanding " obligation or sealed instrument of mortgage and covenant " and some outstanding simple contract debts. The question arose whether that instrument was to be ranked, in the legal order of payment under the statute, among bond debts or among simple contract debts. The court said that the claim was by simple contract, that is, by a note; that the question was whether the mortgage deed could change the character of the note, or give it a preference over other simple contract debts under the statute; that the simple contract debt was not changed by the mortgage; and that the deed gave a particular lien upon certain property, but its object and intent had terminated, and otherwise left the note as it stood before, still a simple contract.

In *Kinard* v. *Young*, 2 Rich. Eq. 247, in the Court of Appeals in Equity and Court of Errors of South Carolina, in 1846, it was held that, in the administration of the assets of an insolvent testator or intestate, mortgages, as mortgages, were not entitled to priority over rent, specialties, and simple con-

tract debts, except so far as they were liens on any particular part of the estate, and that, after the lien was exhausted, the grade of the demand must be determined by the nature of the instrument which the mortgage was given to secure; the court following the decision in *Tunno* v. *Happoldt.*

The provision of the act of 1789 was incorporated in 1872 in the Revised Statutes of South Carolina, as section 3 of chapter 90, p. 457, as follows: " The assets which come to the hands of an executor or administrator, after proper allowance to the executor or administrator, in a due course of administration, shall be applied to the payment of his debts in the following order, that is to say: 1. Funeral and other expenses of the last sickness, charges of probate or letters of administration; 2. Debts due to the public; 3. Judgments, mortgages, and executions — the oldest first; 4. Rent; 5. Bonds and debts by specialty; 6. Debts by simple contract."

In 1875, the case of *Edwards* v. *Sanders*, 6 So. Car. 316, was decided by the Supreme Court of the State. It was held that, under section 26 of the act of 1789, prescribing the order in which debts of a decedent are to be paid, mortgages, whether of chattels or real estate, rank in the third class, and are entitled to payment out of the general estate in preference to specialty and simple contract debts; that a purchase of the mortgaged premises, by the mortgagee or his assignee, under a decree for foreclosure, does not extinguish the mortgage debt for any unsatisfied balance that may remain; and that, where the purchase is made after the death of the mortgagor, the unsatisfied balance retains its rank as a mortgage debt, with right to priority of payment out of the general estate, over specialty and simple contract debts.

While the case of *Edwards* v. *Sanders* stood as the rule of construction, the referee in the present case held that the mortgages in question were preferred claims. Before the case came on to be heard upon exceptions to the report of the referee, the case of *Piester* v. *Piester*, 22 So. Car. 139, was decided, in January, 1885, by the Supreme Court of the State, which held that, under the act of 1789, a mortgage, as such, had no precedence in the administration of the estate of a deceased person, except

to the extent of its specific lien upon the property mortgaged, and that when such lien was exhausted the mortgage ranked according to the grade of the demand secured by it; thus approving the case of *Kinard* v. *Young*, and overruling that of *Edwards* v. *Sanders* The court said: "We think that a creditor of a decedent's estate, whose claim is secured by a mortgage on particular property, has under the act a lien upon that property; but when that is exhausted the mortgage as such is *functus officio;* and in further marshalling the assets the demand must rank according as it may be a simple contract or specialty." The court cited the cases of *Tunno* v. *Happoldt* and *Kinard* v. *Young*, and said that the doctrine asserted by them was regarded as the settled construction of the act of 1789, until the case of *Edwards* v. *Sanders*. Of that case the court said that it "is not only unsustained by proper rules of construction, but is in direct opposition to the decided cases and what was at that time considered the settled law of the State." The court then referred to the act of South Carolina, passed December 14, 1878, entitled "An act to alter and amend the law in relation to the payment of debts of a decedent" (No. 548, 16 Stat. 686), which provides: "That in the administration of the assets of a decedent, mortgages shall not be entitled to a priority over rents, debts by specialty, or debts by simple contract, except as to the particular parts of the estate affected by the liens of such mortgages. That after the property covered by the liens is exhausted, the grade of the demand shall be determined by the nature of the instrument which the mortgage was given to secure," as an act which, although it was passed after the facts in the case then at bar arose, "only declared what had been the law of the State since the act of 1789."

After a consideration of these cases, the Circuit Court reached the conclusion, in the present case, that the mortgages in question came under the operation of the decision in *Piester* v. *Piester*, and were not preferred claims as mortgages. The decree of that court was that, the lien of the mortgages having been exhausted, they were no longer preferred claims; and that the debts they were given to secure could only be proved

and take rank against the assets in the hands of the administrator according to the nature of the instrument evidencing the debt, and the statute relating thereto. Exceptions were filed to the decree and the case was heard on appeal by the Supreme Court of the State, which, in April, 1886, affirmed the decree of the Circuit Court. 24 So. Car. 559.

The point was taken by the appellants in the Supreme Court of South Carolina that the case of *Piester* v. *Piester* could not be applied to their cases, for the reason that so to apply it would impair the obligation of contracts or divest vested rights, because, at the time of the making of the contract of Hopkins, Dwight & Co., the law, as then declared by the case of *Edwards* v. *Sanders*, required that the balances due on the two debts should be ranked as mortgages, and as such be entitled to priority over specialty debts; and that the decision in *Piester* v. *Piester* could not divest rights which became vested at the time the intestate died, under the law as it was then declared to be.

But the Supreme Court said that the construction placed on the provisions of the act of 1789 by the decision in *Piester* v. *Piester*, was the same as that laid down in *Tunno* v. *Happoldt* and *Kinard* v. *Young;* that the law stood unquestioned down to the time of the decision in *Edwards* v. *Sanders;* that that decision did not seem to have been followed in a single instance; that from what was said in *Piester* v. *Piester* it would seem never to have been satisfactory to the profession; that at the first opportunity it was overruled; and that, in the meantime, the legislature, by the act of 1878, had shown its dissatisfaction with the construction adopted in the case of *Edwards* v. *Sanders*. On the question whether the decision in *Piester* v. *Piester* effected such a change in the law as would forbid its application to the case under consideration, because it would impair the obligation of a contract or divest rights vested under the law as declared in *Edwards* v. *Sanders*, the Supreme Court said, that, as the proper construction of the statute had been settled for a long series of years by decisions of both of the courts of final resort in the State, in accordance with the view declared in *Piester* v. *Piester*, it would be going very far

to say that a single isolated decision, never recognized or followed in any subsequent case, and never recommending itself to the approval of the profession, should be regarded as having the effect of changing the law. "On the contrary," says the court, "whatever may be the opinions of individuals as to its correctness, it must be regarded as an erroneous declaration of what was the law, and as only the law of the particular case in which it was made."

The members of the firm of Hopkins, Dwight & Co., as successors of the former members of that firm, and the trustee of that firm and of Mrs. Melton and her infant children, have brought a writ of error to review the decree of the Supreme Court affirming that of the Circuit Court; and the defendants in error now move to dismiss the writ of error, on the ground of a want of jurisdiction in this court.

It is contended on the part of the plaintiffs in error that the decision of the court below was based upon the application of the act of 1878 as a valid act, affecting the contract of the plaintiffs in error and impairing its obligation. But the validity of that statute was not drawn in question, and the Supreme Court did not pass upon it. The decree of that court does not rest upon that statute, but upon independent grounds. The decision rests upon a ground broad enough to cover the entire case, without considering the statute. It rests upon the ground that the law of South Carolina, under the act of 1789, was such as it had always been held to be, in *Tunno* v. *Happoldt, Kinard* v. *Young* and *Piester* v. *Piester*, and that the law as so declared had always been the law, and was not varied or changed by anything decided in *Edwards* v. *Sanders*. That being so, we must hold that no Federal question is presented by the record.

This view is in accordance with the decisions of this court in *Kreiger* v. *Shelby Railroad Co.*, 125 U. S. 39, *Desaussure* v. *Gaillard*, 127 U. S. 216, and *Hale* v. *Akers*, 132 U. S. 554, the ruling in which cases is, that where the Supreme Court of a State decides a Federal question, in rendering a judgment, and also decides against the plaintiff in error on an independent ground, not involving a Federal question, and broad enough

;o maintain. the judgment, the writ of error will be dismissed without considering the Federal question.

..The writ of error is

<div align="right">

*Dismissed.*