## 13372

### JEFFERSON STANDARD LIFE INSURANCE CO. v. KING, STATE INSURANCE COMMISSIONER

(163 S. E., 653)

*Messrs. Thomas, Lumpkin & Cain,* for petitioner,

*Messrs. J. M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistants Attorney General,* for respondent.

March 22, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This proceeding is brought by the Jefferson Standard Life Insurance Company, as petitioner, to enjoin the respondent, as insurance commissioner for the State of South Carolina, from collecting the additional 1 per cent. graded license fee provided for by an Act June 16, 1931 (37 St. at Large 390), except as the Act applies to premium collections made from and after June 16, 1931, the date of its approval by the Governor; and to require the commissioner to give credit to the petitioner for all amounts paid as dividends or bonuses to policy holders in South Carolina, whether paid in cash or applied in abatement of premiums.

The petitioner alleges that it is ready and willing to pay such tax as may be collectible under the Act referred to, but that the insurance commissioner has demanded that the fee provided for in the Act be paid for the entire year of 1931 on all premiums collected, although the Act did not go into effect until June 16 of that year; and that, although the Act specifically requires that such license fee be collected as other fees are now collected, and, although Section 4067 of Code 3 of 1922 provides the only authority whereby license fees and taxes may be collected from foreign insurance companies doing business in this State, and the manner of such collection, and although that section permits a deduction for

all foreign life insurance companies from such license fees of any dividends or bonuses paid in cash or applied in abatement of premiums, the insurance commissioner has indicated to the petitioner that he will not permit any deductions under the Act of 1931.

Upon the verified petition, Chief Justice Blease granted a rule requiring the respondent, as insurance commissioner, to show cause before this Court, on the date named in the order, why the relief asked for should not be granted. The respondent demurred to the petition upon the ground that it does not state facts sufficient to constitute a cause of action, for the reason that it appears upon its face that the petitioner is liable for the tax as demanded by the respondent and has neglected and failed to pay it. The issues involved, as stated by the petitioner in its printed brief, are three; these we shall now proceed to consider in the order presented:

I. Is the Act of 1931 retroactive in its effect and operation, and is the insurance commissioner, under its provisions, empowered to collect any tax or license on premiums collected prior to June 16, 1931?

The title and pertinent parts of the Act in question are as follows:

"An Act to Require an Additional Annual License Fee to be Paid by Insurance Companies Doing Business in This State.

"Section 1. * * * The Insurance Commissioner of South Carolina is hereby authorized and directed to require all insurance companies doing business in this State * * * and not incorporated under the laws of South Carolina, to pay, in addition to the annual license fee now provided by law, a graduated license fee in an amount equal to one (1%) per cent. on the total premiums collected in this State. * * *

"§ 2. * * * The Insurance Commissioner of South Carolina is hereby required to collect said fee as other fees are collected and pay over to the State Treasurer.

"§ 3. This Act shall not be construed to in any way affect or reduce the annual license fees provided to be paid under existing laws, but is intended to provide for the payment of an additional fee. * * *

"§ 5. This Act shall take effect immediately upon its approval by the Governor."

It is agreed that the Legislature may enact retroactive laws; but the question here presented is not whether it has such power, but whether in the case at bar it exercised it. The general rule is that "statutes are not to be construed retrospectively, or so as to have a retroactive effect, unless it shall clearly appear that it was so intended by the Legislature." *Ex parte Graham,* 13 Rich., 277; *Warren, Wallace & Co. v. Jones,* 9 S. C., 288. And such construction will not be given "unless it is required by the express words of the statute or must necessarily be implied from such words." *Curtis v. Renneker,* 34 S. C., 468, 13 S. E., 664, 671.

We have not been able to find, from a careful reading and study of the Act in question, any express words requiring that, in the collection of the license fees provided for by it, the statute be given effect and operation prior to the date it was approved by the Governor and became a law—June 16, 1931. Nor do we find any words from which such effect must necessarily be implied. The respondent contends that, as the tax provided for is based upon an annual period and is to be collected at one time only during the year, it is manifest that the Act was intended to be retrospective, but we do not think that this fact alone is sufficient to support such a conclusion. By Section 4067 of Vol. 3 of the Code of 1922, passed in 1909, all foreign life insurance companies were required to pay, in addition to the annual license fees then provided for by law, a graded license fee of 2 per cent. on the total premiums collected by such companies in the State. The present Act provides for the payment of a graduated license fee in an amount equal

to 1 per cent. of the total premiums collected in the State, "in addition to the annual license fees now provided by law"; and, while in its title the Act is denominated as one to require an additional annual license fee, we do not think, as we have stated, that this alone is sufficient to support a holding that the Act was clearly intended to be retrospective. We have reached this conclusion from a consideration of the Act as it is written, being mindful of the well-known rule that, if there is any doubt in such matter, it should be resolved in favor of the taxpayer. In addition, as is generally held, retroactive license taxes are usually unjust, all of which lends weight and support to the conclusion that there was no intent on the part of the Legislature, in the passage of the Act, to give it the effect contended for by respondent. It seems that, in so important a matter, if such effect was intended, the lawmaking body would have expressly so stated, or have clearly implied it.

II. Is the insurance commissioner required, by the terms of Section 2 of the 1931 Act to collect the fee provided for therein in accordance with the provisions of Section 4067 of Vol. 3 of the Code of 1922, which allows deductions for dividends or bonuses paid in cash or applied in abatement of premiums?

The portion of Section 4067 relied on by petitioner is as follows: "In addition to the annual license fees now provided by law the Commissioner shall require each foreign life insurance company of any class licensed by him * * * to pay as an additional and graded license fee an amount equal to two per centum on the total premiums, i. e., total premium income or total premium receipts from the State, *less any dividend or bonuses paid in cash or applied in abatement of premiums* of such company as collected from citizens of or residents of this State. * * *" (Italics added.)

The contention is that the insurance commissioner should permit the deduction provided for by the italicized portion

of the section quoted, in collecting the tax imposed by the Act of 1931, for the reason that there is a clear reference to this provision in Section 2 of that Act, requiring the tax therein provided for to be collected "as other fees are collected."

From a careful study of Chapter 48 of the Code, which includes Section 4067, we are inclined to disagree with petitioner's view. We think that the language of Section 2 of the 1931 Act refers, not to the basis for the computation of the tax to be paid, but to the method of collection provided by existing laws for the collection of insurance fees of all kinds.

III. Should the insurance commissioner, as a matter of law independently of Section 4067, in computing the license fee or tax collectible under the 1931 Act, give credit to the insurance companies affected thereby for any amounts paid as dividends or bonuses to policyholders in this State, whether paid in cash or applied in abatement of premiums?

The petitioner argues that, even if the language of Section 2 of the Act of 1931, requiring the insurance commissioner "to collect said fee as other fees are collected," does not mean that, in the collection of the tax under this Act, the same deductions should be allowed as are provided for under Section 4067, its position that the deductions should be allowed should still be sustained, for the reason that such view is supported by the great weight of authority and is just in principle.

In 26 R. C. L., at page 187, we find: "whether an insurance company taxable on premiums is to be assessed the full amount of premiums charged or the amount of premiums left after deducting the dividends credited to the policyholders is a question upon which the Courts are not in agreement. Generally, however, where the statute authorizes an assessment or a tax on the gross annual premiums collected by the insurance company it is construed to refer to money actually collected and used for insurance

purposes and not to include the fixed premiums, where the company returns to the policyholder or credits on his annual premiums the difference between the fixed premium and the actual cost of insurance."

In the case of *State v. Hibernia Insurance Co.*, 38 La. Ann., 465, the Act construed provided:

"That for every business conducted by an insurance company * * * or firm doing an insurance business of any kind * * * in this State, whether located here or operating through a branch department * * * the license shall be based on the gross annual amount of premium, etc.

"Provided, that the gross amount of annual premiums shall not include unearned and returned premiums and re-insurances."

The insurance company, in estimating the gross annual amount of premiums to be used as a basis for the tax, deducted, as "unearned and returned premiums and reinsurances," the rebate allowed to policyholders. The State contested its right to make such deduction under the law. The Court said: "It only remains to be considered whether the 'rebates' are to be deducted in estimating the 'gross annual amount of premiums.' The law authorizes the deduction of 'unearned and return premiums,' and hence it is contended that it excludes deduction of 'rebates.' But we think it very clear that in using the term 'gross amount of premiums,' the law refers to premiums actually received or earned; and as, by the terms of their contracts, the companies allowing such rebates only receive the difference between the premium stipulated and the rebate, it seems clear that such difference, only, constitutes the gross premiums earned. The contracts are made with the full knowledge and understanding that such rebates are to be allowed, and it is a mistake for the State to say that they are mere voluntary returns by the company."

*Connecticut Mutual Life Insurance Co. v. Commonwealth*, 128 Ky., 174, 107 S. W., 802, 803, was an action by a

mutual insurance company for the recovery of certain taxes that had been paid by it.

The statute (Ky. St., 1903, § 4226) construed by the Court was as follows: "Every life insurance company, other than fraternal assessment life insurance companies, not orgainzed under the laws of this state, but doing business therein, shall, on the first day of July in each year, or within thirty days thereafter, return to the Auditor of Public Accounts, for deposit in the insurance department, a statement under oath of all premiums receipted for on the face of the policy for original insurance, and all renewal premiums received in cash or otherwise in this State, or out of this State, on business done in this State during the year ending the 30th day of June last preceding, or since the last returns were made, and shall at the same time pay into the state treasury a tax of two dollars upon each one hundred dollars of said premiums as ascertained."

The syllabus correctly states the holding of the Court, in substance, as follows: "That where an insurance company in its policy stipulated for a premium larger than was actually needed to carry the risks insured against under ordinary conditions, but which might be needed in case of extraordinary conditions, and, in order to provide in advance against such a contingency, collected as premium for the first year the full amount stipulated for, setting aside so much thereof as was overpayment as a guarantee against misfortune, and then for the premiums for the succeeding years did not collect the entire amount stipulated for because of the sufficiency of the overpayment of the first year's premium to guard against additional risks, but designated the part not collected from the policy holder as a dividend, the company was not liable to taxation on the entire premiums stipulated for in the policy, but only for the amount actually collected, as the part of such premiums designated by the company as a dividend was not in fact a dividend, but merely an overcharge, which was never collected from

the policy holder; and hence was not received by the company as 'cash or otherwise' within the terms of the statute."

In *State v. Wilson,* 102 Kan., 752, 172 P., 41, 43, L. R. A., 1918-D, 955, it was held that a tax upon all premiums received, whether in cash or notes, in the state or on business done in the state for insurance of life, etc., does not include that portion of the fixed premium returned or credited to the policyholder over and above the actual cost of the insurance, the Court saying:

"It is a prudent policy which for the time being exacts from the policy holder somewhat more than the estimated amount needed to pay the proper charges on an insurance business. The inherent uncertainties of any business commend such foresight. But neither the insurance company nor its patrons should be penalized for so doing; and moneys received as premiums, but returned because not necessary for premiums, should not be taxed as such. True it is that:

" 'He who hopes a faultless tax to see

" 'Hopes what ne'er was, nor is, nor e'er shall be.'

"But Legislatures do not purposely intend to impose irrational, illogical, or unjust burdens of taxation. Statutory language, imposing an exceptional or irrational burden of taxation, should be so clear and unambiguous as to leave no room for debatable interpretations. It cannot be presumed that the Legislature intended that the collection or non-collection of the premium tax should be governed by a question of bookkeeping nor by an undue significance to mere words of terminology."

In *Commonwealth v. Insurance Co.,* 254 Pa., 510, 98 A., 1072, it was held that, in computing a tax upon the entire amount of premiums of every character, dividends paid to policyholders representing the difference between the gross premiums paid and the actual cost of the insurance are not to be included. See, also, *Penn. Mut. Life Insurance Co. v. Henry,* 110 Miss., 402, 70 So., 452; *Northwestern Mut. Insurance Co. v. Roberts, State Treasurer,* 177 Cal., 540, 171 P., 313; *German Alliance Insurance Co. v. Van Cleave,* 191

Ill., 410, 61 N. E., 94; *People ex rel. Continental Insurance Co. v. Miller,* 177 N. Y., 515, 70 N. E., 10; *State ex rel. Nat. Life Insurance Co. v. Jay,* 37 Wyo., 189, 260 P., 180; *People v. Insurance Co.,* 179 Mich., 371, 146 N. W., 235.

A contrary view is expressed in the case of *Metropolitan Life Insurance Co. v. State,* 186 Ind., 407, 116 N. E., 579. In this case, the Court, after a full discussion of the question presented and a review of numerous decisions, held that bonuses and dividends returned to policyholders were included in gross receipts received from premiums and were liable for the tax. See, also, *Citizens' Mut. Insurance Co. v. Lott,* 45 Ala., 185; *Fire Ass'n v. Love, Commissioner,* 101 Tex., 376, 108 S. W., 158, 810; *Mass. Bonding & Insurance Co. v. Chorn, Superintendent,* 274 Mo., 15, 201 S. W., 1122.

It will be noted that, in the cases cited, the words used as descriptive of the amount of premiums to be taken as the basis for computation of the tax are "gross," "all," and "entire," the statutes construed being fairly representative of this kind of legislation, while, in the case at bar, the 1931 Act, as we have already pointed out, provides that the license fee therein imposed shall be computed on the "total" premiums collected. The word "total" means, as defined by Webster, "whole; undivided; lacking no part; entire." The same authority defines the word "all" as "the aggregate; the whole; totality." Definitions of the word "entire" are "undivided; whole; full and perfect." Among the definitions given, the word "gross" are "whole; entire; total." These words, as used in the several statutes—including our own—and decisions referred to above, appear to have practically the same meaning. We might, therefore, following the weight of authority, conclude that, when the Legislature in the 1931 Act used the expression "total premiums," it meant, as contended for by the petitioner, only the amount of premiums received and actually retained by the company—which would not include any dividends or bonuses paid to policyholders, whether in cash or applied in abatement of premiums. But there is another circumstance to be considered

in this connection. There existed at the time of the passage of the 1931 Act a law (Section 4067 of Vol. 3 of the Code of 1922) which provided for a similar tax of 2 per cent., to be computed on the "total premiums" collected, "less any dividend or bonuses paid in cash or applied in abatement of premiums"; but the Legislature, in passing the 1931 Act, for the purpose of raising revenue by imposing upon the same companies an additional similar tax of 1 per cent. of the "total premiums" collected, did not provide that the dividends or bonuses referred to in Section 4067 of the Code should be deducted. It appears to us, therefore, when the Act of 1931 and Section 4067 of the Code are read and considered together, that it was the clear intention of the Legislature not to allow, in the collection of the additional license fee imposed by the Act of 1931, the deductions provided for in Section 4067 of the Code.

It is, therefore, the judgment of the Court that the respondent, insurance commissioner, be, and he is hereby, permanently enjoined from collecting the additional 1 per cent. license fee, provided for in the Act of 1931, upon any premiums collected by the petitioner prior to June 16, 1931; in other respects, the prayer of the petitioner is refused, and the petition dismissed.

And it is so ordered.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES CARTER and BONHAM, and MR. ACTING ASSOCIATE JUSTICE S. W. G. SHIPP concur.