EASTERBY–THACKSTON, INC., Plaintiff,

v.

CHRYSLER CORPORATION.

Civ. A. No. 78–1144.

United States District Court,
D. South Carolina,
Greenville Division.

July 18, 1979.

H. Donald Sellers, W. Francis Marion, Thomas H. Coker, Jr., Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for plaintiff.

C. T. Wyche, Greenville, S. C., for defendant.

Cary H. Hall, Jr., Greenville, S. C., for defendant and non-party Chrysler Credit Corporation.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND JUDGMENT ON PLEADINGS

HEMPHILL, District Judge.

Plaintiff brings this action as a former franchise dealer of Chrysler Corporation whose dealership area covered portions of Greenville and Pickens Counties. From 1959 until April 5, 1978, when plaintiff terminated its direct dealership agreement pursuant to the terms of that agreement, plaintiff was Chrysler, Plymouth, and Imperial dealer for the Chrysler Corporation; prior to June 1, 1976, its direct dealership agreement was with the subsidiary, Chrysler Motors Corporation. After terminating the contract, plaintiff filed this action charging defendant with breach of contract; coercion, intimidation and bad faith under 15 U.S.C. § 1221 et seq. (Automobile Dealers' Day In Court Act); breach of contract in violation of that Act; unfair and deceptive acts under § 56–15–40, Code of Laws of South Carolina, 1976; violations of the Clayton Act; unfair trade practices under § 39–5–20; and unfair competition under § 39–3–10. Defendant answered by specifically denying many of the allegations; asserting the protection of various statutes of limitations; claiming that plaintiff breached the contract and violated § 1221 of Title 15 and § 56–15–40 by its act of bad faith; and that plaintiff's cause of action under § 56–15–40 [1], regulating motor vehicle manufacturers, distributors and dealers, must fail as the contract predates the Act which is prospective only in effect. By its Motion for Judgment on the Pleadings, Rule 12(c), Federal Rules of Civil Procedure, defendant, in effect demurs to plaintiff's cause of action under § 56–15–40. Plaintiff then filed a Motion for Partial Summary Judgment pursuant to Rules 12(b) and 56, which demurs to defendant's position that § 56–15–40 is inapplicable to the facts of this case. Thus the question presented for decision is whether § 56–15–40 was intended by the legislature to apply to this case, and if so, whether the statute thus violates the South Carolina and federal Constitution.

Chrysler contends that the dealership contract signed on October 10, 1959, predates the passage of the Act on May 29, 1972, with the result that the Act should be held inapplicable. Plaintiff has responded that the merger of Chrysler Motors Corporation into Chrysler Corporation on June 1, 1976, with the assumption by Chrysler Corporation of the rights and duties under the contract, constitutes a new contract which postdates the Act.[2]

---

[1]. S.C.Code of Laws, 1976, § 56–15–30 reads: Unfair methods of competition and unfair or deceptive acts or practices declared unlawful.

(a) Unfair methods of competition and unfair or deceptive acts or practices as defined in § 56–15–40 are hereby declared to be unlawful.

(b) In construing paragraph (a) the courts may be guided by the definitions in the Federal Trade Commission Act (15 U.S.C. 45).

§ 56–15–40 then proceeds to list certain acts which are prohibited under § 56–15–30.

[2]. Chrysler must be considered a new party to this contract due to the merger. Chrysler Motors was dissolved while Chrysler Corporation remained in existence as the absorbing corporation. See *Metropolitan Edison Co. v. Commissioner of Internal Revenue*, 98 F.2d 807, 810 (3rd Cir. 1938).

**956**

Plaintiff's characterization of the June 1, 1976 activity as constituting a "new contract," strains the meaning of that term beyond the limits which this court is willing to project. There was no change in the rights or duties of Easterby-Thackston as a result of Chrysler becoming a party to the contract. Nor was the consent of plaintiff necessary for the substitution of Chrysler as a party. Furthermore, the original contract specifically contemplated this very situation, stating that Chrysler Motors "may assign this agreement only to Chrysler Corporation." Since the parties operated exclusively under the terms of the original agreement, as amended prior to passage of this Act, the assumption of this contract by Chrysler, does not constitute a "new contract." See *Pittsburgh-Buffalo Co. v. American Fidelity Co.*, 219 F. 818, 824 (3rd Cir. 1915) (defining a new contract as a new agreement which contemplates concurrence and action by both the parties making the alteration).

Nor does the immaterial modification of March 17, 1976 which adds the position of Chrysler National Dealer Placement Manager to the list of positions in paragraph 5 of the Direct Dealer Agreements which are authorized to consent to assignments or approve modifications, constitute a sufficient alteration of contractual rights to call it a new contract. While this court might accept a fairly low threshold of materiality in determining whether a new contract exists which postdates the Act, the modification in question is simply too trivial.

The latest material modifications of the contracts which this court has before it are prior to the passage date of the Act, May 29, 1972, or the intended effective date six months earlier of January 1, 1972.[3]

Plaintiff argues that no provisions of the Act impair any obligation of the Direct Dealer Agreement between Chrysler and Easterby-Thackston. If this is true, then the statute can be applied to this agreement, without being retroactive. South Carolina follows the rule of statutory construction which construes legislation to be prospective in operation unless the legislative intent that it be given retrospective operation clearly appears from the express language of the Act. *Pulliam v. Doe*, 246 S.C. 106, 142 S.E.2d 861 (1965); *Independence Ins. Co. v. Independent Life & Acc. Ins. Co.*, 218 S.C. 22, 61 S.E.2d 399 (1950); *Johnson v. Baldwin*, 214 S.C. 545, 53 S.E.2d 785 (1949); *Jefferson Standard Life Ins. Co. v. King*, 165 S.C. 219, 163 S.E. 653 (1932); *Home Bldg. & Loan Ass'n v. City of Spartanburg*, 185 S.C. 313, 194 S.E. 139 (1937). But as plaintiff has implied, a statute would not be defined as retroactive unless it first impairs a vested contractual right. *Rowell v. Harleysville Mutual Ins. Co.*, S.C., 250 S.E.2d 111 (1978); *McLure v. Melton*, 24 S.C. 559 (1886), appeal dismissed *Hopkins v. McLure*, 133 U.S. 380, 33 L.Ed. 660 (1890).

Chrysler's attorneys have furnished this court with examples of ways in which the dealership agreement might be altered by the Act. While the contract requires Chrysler to fill Dealer's orders on a "best effort" basis, the Act required the orders to be filled unless an "Act of God" or some other event beyond defendant's control prevents the order from being filled. § 56–15–40(3)(a).[4] Chrysler asserts that the Act might impose liability on the manufacturer

---

**3.** See *Superior Motors v. Winnebago Industries, Inc.*, 359 F.Supp. 773, 780 (D.S.C.1973).

**4.** S.C.Code of Laws, 1976, § 56–15–40(3)(a) provides: Specific acts deemed unfair methods of competition and unfair or deceptive acts or practices; Office of Administrator; appointment of personnel . . .

(3) It shall be deemed a violation of paragraph (a) of § 56–15–30 for a manufacturer, a distributor, a wholesaler, a distributor branch or division, a factory branch or division, or a

wholesale branch or division, or officer, agent or other representative thereof:

(a) To refuse to deliver in reasonable quantities and within a reasonable time after receipt of dealer's order, to any motor vehicle dealer having a franchise or contractual arrangement for the retail sale of new motor vehicles sold or distributed by such manufacturer, distributor branch or division, factory branch or division or wholesale branch or division, any such motor vehicles as are covered by such franchise or contract specifically publicly advertised by such manufacturer, distributor, wholesaler, dis-

for failure to fill orders at the end of the model year when the plants must cease production and retool for the new model year. This court's attention has also been directed to the paragraphs relating to the need for Chrysler's consent for any changes in dealer's capital structure or assignment of the dealer's interest.[5] Both, it is asserted, are impaired by the provisions of the Act. § 56–15–40(3)(h) & (i).[6]

Defendant also argues that § 56–15–40(2)(a)[7] could be construed to prohibit Chrysler from advising a dealer that it must order a sufficient number of cars to meet its Minimum Sales Responsibility under the agreement.

While this court is doubtful that a good faith effort by Chrysler to carry out the terms of the contract would be impaired by the Act, this court prefers to leave these matters to the state courts. Sufficient for the determination of this case are the conclusions of Judge Simons in *Superior Motors v. Winnebago Industries, Inc.*, 359 F.Supp. 773 (D.S.C.1973), that the Act would impair the contractual obligations in that case. While not intimating an endorsement of the constitutional analysis in that case, this court does agree that the Act would have had a retroactive effect in *Superior Motors*. In discussing the effect on the rights of the parties, Judge Simons wrote:

> In the case at hand, the new legislation imposes several added conditions or

---

tributor branch or division, factory branch or division, or wholesale branch or division to be available for immediate delivery; *provided, however*, the failure to deliver any motor vehicle shall not be considered a violation of this chapter if such failure be due to an act of God, work stoppage or delay due to a strike or labor difficulty, shortage of materials, freight embargo or other cause over which the manufacturer, distributor, or wholesaler, or any agent thereof, shall have no control.

**5.** Chrysler Direct Dealer Agreement, Paragraphs 3 and 5 are as follows:

(3) Direct Dealer's Capital Stock or Partnership Interest.

If DIRECT DEALER is a corporation or partnership, DIRECT DEALER represents and agrees that the persons named below own beneficially, and will continue to own beneficially (except for transfers not affecting a change in majority control or interest) unless CHRYSLER agrees otherwise in writing, the capital stock or partnership interest of DIRECT DEALER in the percentages indicated below:

J. E. Thackston _____ 75% Voting Stock
T. R. Easterby _____ 25% Voting Stock

(5) Former Agreements and Waiver, Modification or Assignment of this Agreement.

. . . . .

DIRECT DEALER may not assign this agreement without the written consent of CHRYSLER, executed by the President or a Vice-President of Chrysler Motors Corporation.

CHRYSLER may assign this agreement only to Chrysler Corporation or any wholly owned subsidiary of Chrysler Corporation and will advise DIRECT DEALER of any such assignment by notice signed by the President of a Vice-President of Chrysler Motors Corporation and mailed to DIRECT DEALER.

**6.** S.C.Code of Laws, 1976, § 56–15–40(3)(h) & (i) read as follows:

(h) To prevent or attempt to prevent by contract or otherwise, any motor vehicle dealer from changing the capital structure of his dealership or the means by or through which he finances the operation of his dealership, provided the dealer at all times meets any reasonable capital standards agreed to between the dealership and the manufacturer, distributor or wholesaler, and provided such change by the dealer does not result in a change in the executive management of the dealership.

(i) To prevent or attempt to prevent by contract or otherwise, any motor vehicle dealer or any officer, partner or stockholder of any motor vehicle dealer from selling or transferring any part of the interest of any of them to any other person or persons or party or parties; provided, however, that no dealer, officer, partner or stockholder shall have the right to sell, transfer or assign the franchise or power of management or control thereunder without the consent of the manufacturer, distributor or wholesaler except that such consent shall not be unreasonably withheld.

**7.** S.C.Code of Laws, 1976, § 56–15–40(2)(a) provides:

(2) It shall be deemed a violation of paragraph (a) of § 56–15–30 for a manufacturer, a distributor, a wholesaler, a distributor branch or division, a factory branch or division, or a wholesale branch or division, or officer, agent or other representative thereof, to coerce, or attempt to coerce, any motor vehicle dealer:

(a) To order or accept delivery of any motor vehicle or vehicles, appliances, equipment, parts or accessories thereof, or any other commodity or commodities which such motor vehicle dealer has not voluntarily ordered.

duties upon the manufacturer, while taking from that party rights to which it was entitled in the contract. Under the contract, the franchise automatically terminated without any notice at the expiration of the term unless it was renewed in writing. Under the statute, the manufacturer cannot simply allow the agreement to expire, but must give sixty days' notice of his intention not to renew, together with a statement of his specific reasons for nonrenewal. Under the contract, either party had the right to cancel the agreement without any requirement of "cause", but simply upon ninety days' notice. Under the statute, the nonrenewal of a franchise without "due cause" is declared to be an "unfair termination," any provisions of the contract to the contrary notwithstanding. A manufacturer running afoul of the provisions of this legislation renders itself vulnerable to an award of double the plaintiff's actual damages, and treble punitive damages.

 Contrary to plaintiff's position, a law cannot be applied retroactively in some instances, and not be so applied in others; it is an "all or none" proposition. The finding of potential impairment with vested rights places the burden on plaintiff to establish the legislative intent necessary for retroactive application of this law. The Act itself provided for an effective date of January 1, 1972, some six months before it was signed. Thus the South Carolina legislature evidenced an intent for the Act to be retroactive, but clearly limited the scope of that effect. In the face of this clear language, this court fails to see how the provisions of the Act can be read to apply to a contract entered into on May 10, 1965. Clearly,

plaintiff is caught in the net of judicial reluctance to impair vested rights.

Plaintiff has cited the case of *Willys Motors v. Northwest Kaiser-Willys*, 142 F.Supp. 469 (D.Miss., 1956) in which a federal district court gave retroactive effect to an automobile dealer's day in court statute. That court declared that the public purpose of protecting dealers and their employees from the coercive pressures of manufacturers furthered a sufficiently strong state interest to be a valid exercise of the police power and therefore constitutional under the Contracts Clause of the United States Constitution.[8] However, the Minnesota court failed to examine the legislative intent in reference to retroactivity once it found an impairment of a contractual clause. In this court's eyes, the *Willys Motors* case loses its persuasive force when it skirts this crucial issue.

For the reasons stated above, defendant's Motion for Judgment on the Pleadings is hereby granted, plaintiff's Motion for Partial Summary Judgment is denied, and judgment on Plaintiff's Fourth Cause of Action is hereby awarded to defendant.

AND IT IS SO ORDERED.

---

8. Art. 1, § 10 reads: Restrictions upon powers of states.

No state shall enter into any treaty, alliance or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law or law impairing the obligation of contracts, or grant any title of nobility.

No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely nec-

essary for executing its inspection laws; and the net product of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.

No state shall, without the consent of Congress, lay any duty of tonnage, keep troops, or ships of war in time of peace, enter into any agreement or compact with another state, or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.